We have two cases this morning to be argued. Number 18-2224, Guariglia v. United Food and Commercial Workers, Local 464A, Messrs. Kessel and Hanna. Can you please, I'd like to reserve three minutes for rebuttal. You sure may. I lost this case the first time around because I thought the Affordable Care Act applied to this plan. I was wrong on that. I thought I could get around the exclusion for injuries caused by other people by using the essential benefits provision of the Affordable Care Act. I intended to argue that because Congress told the plans to have to provide certain essential benefits, the plans do not have the right to add an exclusion to that. I was wrong. I found that out when I saw the plans reply brief. Can I ask you a question to get to the nub of one of the issues in this case, sir? You made a decision not to include a claim for medical expenses in that lawsuit that you filed, the tort suit I suppose. Correct. Was that a strategic choice on your part? It wasn't an oversight. No, it was a strategic choice because the medical, it was a tough liability case that had no cost on it. And we knew we had no chance of settling it unless we kept the amount we needed to settle the case down. The amount of medical expenses would have been so high, we never could have settled the case. In fact, we couldn't settle. We had to try it. I wrote to the plan. I said, look, I'm not going to protect your interest, which I see, I think I have the right to do. I told them to subrogate. Well, but there was a requirement that you make a claim against anyone who may be liable in this case for medical expenses. That requirement is a contractual requirement. It does not allow, it does not relieve them of their obligation to provide benefits under the terms of the plan because it's contractual relief, not equitable relief. And I am not required to include the plan regardless of the requirement. The Supreme Court noted that obliquely in McCutcheon. In fact, in Montaniel, two of the cases that were over-advocated by the Supreme Court in Montaniel included cases in which the claim was clearly settled because of contractual relief against unemployment and disability benefits. And the court said this is contractual. They cannot relieve themselves of obligation to provide benefits because of a cause in the contract, in the plan. That's not equitable relief. And I am under no affirmative obligation by anything other than the plan to present their claim. This is not Medicare. There's no third-party liability provisions in ERISA. And frankly, places me in a conflict of interest with my client. So your argument is that an employer cannot make that a condition of employment or a condition for getting medical expenses paid by the employer. The employer cannot do that. Is that your position? They cannot relieve themselves of the obligation. Correct. They cannot relieve themselves of the obligation to comply with the promises they made to pay certain benefits because of some sort of contractual condition in the plan. And there's legal support for your view on that point? Well, it's developing legal support. Developing legal support? There is. It's developed. There's a line in the cushion where the Supreme Court notes that the economic problems with what they ruled are that the plans are allowed to liquidate their claim. And then the Supreme Court goes on to say that the plans must compromise, must need a compromise to make this worthwhile for plaintiffs, attorneys, like myself, to include the claims. That only makes sense to me if I have the option of walking away from the plan. Otherwise, I have no bargaining power. I just have one more little question for you. You say it was a strategic choice. So you made a conscious decision that you were not going to seek or include a claim for a medical expenses in the tort case. Yes. Could you give me a rationale for that? The rationale was that the amount of the medical expenses was going to be so high we could never settle a poor liability case. If I wanted to sell the case as opposed to try it, and we did get settlement offers on this case, on the liability case. They just weren't enough to pay off the medical expenses. It was putting me in a conflict of interest for my clients strategically. I had to make tactical decisions based upon protecting their interests instead of protecting my clients interests. Wait a minute. If you filed an action, what damages did you seek then? Payments for paying lost wages, a permanency of our injuries, a pre-court claim. But in the state action, don't you have something like the entire controversy doctrine or something like that? In the state courts? Yeah. Which is why I wrote to them and I told them that they have to intervene and protect their own interests by way of their subrogation rights. They chose instead to use the exclusion for injuries caused by third parties. I was trying to get around that by the Affordable Care Act. I wasn't aware that it was not in effect yet against this plan and that's where I made my mistake. Okay. But what element of ratio to CADA do you contend is not there? I mean there's three elements. Finality of the prior action, same parties and the same cause of action. The claim is not recruited because this issue, the issue of whether the tort fees would be no third party benefits was not brought before the court the first time around, could not be brought before the court the third time around. It's a late developing fact. So you're different cause of action is what you're saying? Well it's not a different cause of action. They relied upon an exclusion that we later found out was not applicable. If it's not applicable, I didn't know that at the time. Obviously I could not go before the state court and say, hey my client Christine Guardia deserves to get money because she has a good cause of action and go before the federal court and say she's not going to, she doesn't have a good cause of action. It turned out that way. I thought we had a decent liability case. I was wrong. Got no cause by the jury. Now this was an action for somebody what stepping into a pothole? Yeah. Well what happened, they were repaving the street in front of her house. You know how they groove when they, before they repave. What happened was that they had it walk off the site for a period of time. There was some sort of dispute with the township and the grouped up portion of the pavement just stayed there and one day she was getting out of a car and she stepped into where it was torn up and she hit a number on her ankle. Hard for surgeries for it. The claims were against public entities I assume? Yes. The Bayshore Water Sewage Authority and Aberdeen Township was a public road and it was a Bayshore Sewage Authority repair project. They're putting in lines and pipes in the street. And there was a no cause? There was no cause of liability. From your standpoint did you and your client meet all your obligations under the insurance plan? I'm sorry? Did she meet all her obligations? Oh yeah. She was enrolled. Her husband was a participant. She was a beneficiary. She got the insurance through her husband. Her husband's a member of the union. They were paid up to date. The employee contributions were being taken out of the payroll. The employer contributions whatever was required were being met. She was fully enrolled in the plan and she would have been eligible but they wanted her to sign a reimbursement agreement which of course asked for contractual relief and they wanted her to which wouldn't be enforceable under ERISA and they wanted us to protect their interest in the liability case. And what's wrong with that? It puts me in a conflict of interest with my client. It required me to protect their interest. I couldn't sell the case. The amount of money was just too uh, to pay them was just too high on a bad liability case. You say the medical expenses were so high that it would have affected the jury's decision on the liability? No, no, no, no. I couldn't sell the case. It would not have affected the jury decision. I'm missing something. What do you mean you can't sell the case? Settle. No, settle. I'm sorry. I'm sorry. No, settle the case. We got an $8,000 offer, would have gotten higher offers. Opening off was $80,000. I think there's about $100,000 in my client's pocket if I did not have to worry about their lien. Because I had to worry about their lien and because I had to worry about the medical expenses, we couldn't sell the case and they were going to offer enough money on a questionable liability case and then from their point of view they made the right decision. Keep in mind also in New Jersey the rule is that we don't get medical expenses. That's Perrier versus Redeker. That's part of the collateral source statute. So you go into a New Jersey courtroom and everyone expects that medical expenses are not going to be recoverable unless some exception is brought to the tortfeasor's attention, but they're not going to pay out on something that's followed by state law. You say under New Jersey law you cannot make a claim for medical expenses? Not reimbursed medical expenses. No, Perrier versus statutory reversal of the common law collateral source statute. State New Jersey support cases Perrier versus Redeker. So you go into the liability case and no one's expecting you to pay medical expenses. Now what I did then is I wrote to them and I said guess what? I'm not going to protect your interests. It's not the type of case I didn't really look after your interests on because I have to, you know, be in my client's best interest to do so and they did not want to intervene and under the subrogation rights and instead they used the exclusion and that's what I lost on the first time around. The trial in this case lasted how long? I'm sorry? The trial in this case lasted how long? Four days. There were a number of extra witnesses. And it was essentially on liability? No, no, no. It was liability and damages. Obviously, excluding medical costs, right? Right. The jury would have awarded non-economic losses, how we got it past liability, but we got no cause to the very first question which asked whether the tort fees was negligent and the jury answered no because they had a good excuse for abandoning the work for such a long time because of other commitments. So your view is that your client met all her obligations under the plan, is that it? Absolutely. I'm not aware of any grounds for their disclaimer other than the fact that there is a tort fees or had a cost to reasons. Judge Hardiman, do you have any questions? I guess I'm still wondering, counsel. I appreciate your candor. You'd be commended for that, talking about your misapprehension about the ACA, which is obviously a complicated law, but I'm wondering if you knew then what you know now, how would this have played out differently? Did your client end up having to pay all these medical expenses that she would not have had to pay because if you had signed the subrogation, then the ERISA plan would have covered those medical expenses? Is that where we are? Yes. I still have no cause of liability. Obviously, the ERISA plan would have gone ahead and paid the medical expenses. Had they wanted to come back after the fact and still make the same argument they're making now and try to withhold medical expenses, they would have had opportunity, but that would have been a business decision on their part. But the upshot is she's liable for the medical expenses now, but had she subrogated, then the plan would have covered the medical expenses? I have a red light steering me, but the plan would have paid the medical expenses as they were incurred, and would the plan try to get reimbursement later on would have been a different story, but it was nothing to obtain reimbursement out of. I have a red light steering me. That's all right. You're on our time. So the carrier here is what, a tertiary carrier? The carrier says they're a tertiary carrier. Well, they make themselves one because they make themselves secondary to the tortfeasor. Okay, who's the primary carrier? If the tortfeasor doesn't pay, they're the primary carrier. There's no other insurance. Either the tortfeasor pays medical or they pay it. There's no other carrier. There's no other insurance available. Okay. All right. Let's hear from Mr. Hanna then. Good morning, your honors. My name is Mark Hanna. I represent the United Food and Commercial Workers Local 464A Welfare Service Benefit Fund. The Welfare Service Benefit Fund is a self-insured ERISA plan. Okay. The plan states that, quote, you, which means the beneficiary, must seek reimbursement and take other steps as are necessary to collect payment, including filing a law slute before this plan will pay benefits. Doesn't that ask beneficiaries to seek reimbursement after they exhaust other sources of payment, such as a tort litigation? Your honors, the plan does not pay any benefits for which a third party may be liable. Okay, but which third party is liable here? The plaintiff, Ms. Garigula herself, said a third party is liable, and they said- A jury said they're not liable. Well, before that happens, your honors, Ms. Garigula had an option to sign a reimbursement agreement. Now, after the fact, they're saying, no, we want you to pay even though we didn't sign that reimbursement agreement. This is all argued. This was a repeat of the argument in district court in 2013. Is the problem that she didn't sign a reimbursement agreement, or is the problem that she did not file a claim in connection with her tort suit for medical expenses? Sorry, your honor. If she had signed the reimbursement agreement, she would have gotten paid their medical expenses. Okay. What if she had filed the claim with a tort suit for medical expenses? If she'd signed the reimbursement agreement, she would have been paid her medical expenses. If they won the tort suit, we would have taken a portion of that recovery. Part of the requirement is that she filed a claim against any person who may be liable for medical expenses. Sure. Right, and I thought that that's part of your contention. She didn't do that, and therefore, she has to pay. No, your honors. This is a function of the plan only covers expenses in which no third party may be liable. If somebody else is liable, the trustees, actually the plan sponsors, made a decision, as they're allowed to under ERISA and was decided by the 2013 district court decision, that they can do whatever ... They can make this determination. Provided it's not arbitrary and capricious. Your honor, actually, the arbitrary and capricious standard doesn't even come into play here. This is a plan sponsor decision. ERISA plans don't have to pay anything unless it's in the plan. The determination as to any specific claim is an arbitrary and capricious issue. Well, she's made a claim back in 2017. Absolutely, your honor. After the jury. So, I keep getting lost. So, who is the third party that may be liable? Well, in 2013, they had ... But today, in 2019, who is the third party that may be liable? Well, your honor, this is a decision that was made in 2013, and at that point, Ms. Grigola had sued a third party that she said was liable. But the jury ... We can't overwrite a jury, can we? No, your honor, but what we have to do is step into the shoes of the plan at that time. At this time, there's no new claim. But the plan requires you at that time to go after a possible third party. They did that. They lost. They now file a claim. Who is now liable? If they had signed a reimbursement agreement, they would have gotten paid. I got it. They're changing their bet. It's like buying insurance after you've gotten a buyer. I got it. But the question is, who may be liable today? Your honor, they said a third party was liable. Who is that third party that actually could be liable? They're off the playing field. The jury has decided. Who else is there that could be liable? Your honors, we don't know. The plan decision was made way back when. So if you don't know, how can you say a third party may be liable? Well, in 2013, we said ... We're in 2017. They did what they were supposed to do ultimately in 2013. They sued other parties. They lost. Correct. There ain't nobody else that I know of unless you tell me who that third party is. Right. So they had choices to make in 2013. They could have appealed that decision in the circuit court, or they could have signed a reimbursement agreement. They didn't do either of those things. What they're saying is they have a ... They took a strategic risk of going ... What they're saying is they have a cause of action after they followed what the plan required them to do in exhausting their claims against others. I still don't know ... You don't have a name of anyone who conceivably could be liable. Your honor, so the plan decision was made in 2013. The plan is allowed ... I'm in 2017 now. Yes, your honor. So in 2017, the plan gets ... They come back, and they say, plan administrator, we lost in state court. Plan administrator sees a claim, and they say, well, your claims are over 180 days old. Under an arbitrary capricious standard, they say, you can't appeal anymore to ... You said a third party was responsible, and you didn't sign a reimbursement agreement. So from your perspective, the big problem is her not signing the reimbursement agreement. That is the big problem, your honor. Had she signed the reimbursement agreement ... Had she signed, we would have paid. They made a strategic choice that ... When are those in the tort suit? The Judge Wiginton in 2013 understood that. If you look at Judge Wiginton's decision, she says in explaining the plaintiff's argument, it's not certain whether plaintiff will recover any monetary sum in the liability action. Judge Wiginton also said in 2018 in her footnote one, the entry of the jury verdict in a state court liability action does not change the court's analysis. The existence of new facts arising after a final judgment are irrelevant for the purposes of a claim preclusion analysis, where the material facts in each suit are the same. Further, in Ms. Garigula's initial motion for summary judgment, the plaintiff previously raised and the court considered that there will be no determination of liability against the tort feasors because plaintiff claimed that she did not include medical expenses in her claim. Your Honor, we're here on a repeat of the 2013 action. All the elements of claims preclusion are met. Does the plan require beneficiaries to sign a reimbursement agreement? The plan does require beneficiaries to sign a reimbursement agreement. Where does it say that? Where does the plan say that there's a requirement to beneficiaries to sign a reimbursement agreement? It's in the SPD. Which is in the record, Your Honors. The only thing I could find is that's a condition for advancing expenses. Right. But where does it require beneficiaries to sign a reimbursement agreement? So the model is we don't pay if a third party is responsible, but we will advance payment to pay those medical expenses. This is a very generous provision. Again, ERISA doesn't require any plan to give any medical... You say you do that if the employee agrees. If the participant agrees, correct? Participant. Yes. Right. You got to sign on a dotted line. Is that your view? Yes. And without that signature agreeing to pay for medical expenses, you feel you have no obligation. You have no contractual obligation. Absolutely. Because at that time, they said somebody else... It matters not that she failed, she didn't succeed. So it would have been futile for her to include a claim for damages in that tort suit because she was no cause. Well, at that time, we don't know what's going on in the state court action. All we know is that we've seen that they've sued a third party saying they're responsible. At that point in time, the plan has to, as a obligation, say, all right, we're not responsible, but hey, we'll pay these expenses. Very generous plan provision. And if you guys win, great. We'll get our money back that we paid. If you lose, we're out the medical expenses. They didn't sign. They made a strategic decision not to sign. Counsel, even if they had not signed, isn't it true that she might have an avenue of recovery against the plan had she at that time, during that dispute, protectively filed an appeal within the 180-day exhaustion period? Yes, Your Honor. It is, absolutely. So another avenue was during this dispute, Ms. Guaraglia could have said, well, we're going to continue to disagree about whether I need to sign the subrogation agreement. And in the event things don't go well for me in this tort suit, I want to be heard by the plan. That's right. And then the plan would have to consider the state of affairs after the litigation was over, correct? Absolutely, Your Honor. If you look at Judge Ambrose's initial question that you seem to be sort of dodging, quite frankly, had she protectively appealed to the plan, would she on these facts have been reimbursed for her medical expenses? I don't know, Your Honor. But I do know that there was no exhaustion. If you Judge Wiggins had noted in her 2013 decision that she didn't appeal, but she said, regardless of whether she appealed or not, they've claimed a third party is responsible. And that ends the case. The trustees aren't, if this case were, if this claim were properly appealed, I don't know what the trustees would have done. But they never even had that opportunity, Your Honors. And I think that is an important fact. You did not ground your denial of her claim in 2017 on her decision not to pursue medical expenses in the state of action, did you? We did. We did on the 180 days and the third party liability issue. There was two grounds. I'm looking at your brief here. You're saying that on the third party, given the multiple assertions that a third party was responsible for her April 2012 accident, as a matter of law, the trustees did not act arbitrarily or depreciately in determining that there was no coverage for her medical expenses because the third party may have been liable. Now, we now know a third party isn't liable. I'm just trying to get the third party, the trustees in 2017 had a whole bunch of documents available to them, including their medical, the medical documents, the letters from counsel. But it looks like what you're saying is I don't see you making the argument. I don't see anything in your brief. Is there anything in your brief about a reimbursement agreement? Your Honor, yes. It's a fundamental part. Is there anything in your brief about a Is there anything in your brief about a reimbursement agreement? Well, the reimbursement agreement is... Is there anything... Let's just stop. Yes or no, and then you can explain. No, Your Honor. The reimbursement agreement comes up because it's a response to your questions. The choice here, the material strategic choice that Ms. Grigola's attorney was, I am not going to sign this reimbursement agreement. I'm going to take my bet in state court in the tort action. And that was a choice that didn't work out. And now, like I said, Your Honors, they're trying to buy insurance after the fire happened. Supposing Mr. Kessel had made a different decision and, in fact, sought compensation for medical expenses. Correct. In the trial. Correct. And the jury no-caused all around. Would she be entitled to seek medical expenses from the plan? I don't know, Your Honor, but I think the answer would be no. The key issue... That's your preferred answer, I suppose. No, it's not my preferred answer. It doesn't change the situation. Why? She has completed with part of the requirement that she present a claim against anyone who may be liable. And let's say she has done that. So the plan can make an independent decision as to whether or not they believe third parties are responsible. And they did that, and they didn't sign the reimbursement agreement. They went to state court. They took a risk there. The plan terms say that we can, under the subrogation clause, that they could seek recovery of medical expenses from whatever source. But they made a decision going in, and this is the key issue, that both the 2013 and the 2017 decisions of Judge Wiginton made clear. Going in as a claims preclusion issue, they knew that they had a chance that they weren't going to succeed in state court. They took that risk, and that didn't work out. And we very much wish that Ms. Garigula got her expenses paid through that state court action, but they didn't. And that was a decision they made in 2013. A judge in the district court had a decision that was not appealed, and now they're trying to relitigate the same claim. But it's sort of like 10 times zero is zero, right? In other words, you have to have liability in order to get medical expenses or anything else if they had asked for them, right? Excuse me, can you repeat your question? You have to have liability in order to get damages. You have to have liability to get damages. There is no liability, according to the jury. According to the jury. And that was a risk that they made, that you knew that in 2013 and Judge Wiginton, when she decided her decision, had everything before her, all three elements of claim preclusion. Except that you have this provision that you, the beneficiary, must seek reimbursement and take other steps as are necessary to collect payment, including filing a lawsuit before this plan will pay benefits. Yes, Your Honor. But that was the same claim that was in front of Judge Wiginton in 2013. All those factors were in front of her. But it's not a claim that's ripe until they pursue against the third parties. That's what you require them to do. But in the context of ERISA's claim procedure, it's all over when the trustees made their decision. Is it your point that she had to sign the agreement first in order to be eligible for compensation? Absolutely. Regardless of what happens in the tort claim? Regardless of what happens in the tort claim. So the essence of your claim is she had to sign She had to sign an agreement to get paid in advance. Well, to get paid in advance. In advance of what? In advance of seeking a tort recovery. She had to get reimbursed and the claims would have been paid strikingly in advance. The trustees were willing to do that and they didn't do that. This is not a new factor in the claims preclusion analysis. Judge Wiginton had those things on her plate in both 2013 and before she made a decision. Counsel even argued that that was a possibility. And we're here in the same spot that we envisioned that we would be back then. They didn't appeal Judge Wiginton's decision and they refiled basically the same lawsuit. Do you know what the nature and extent of the injuries were? I don't know, Your Honor. Maybe you're Mr. Kessler. I'm sure you're Mr. Kessler. Thank you. A reimbursement agreement is a promissory note. A promissory note is contractual relief. They're not, a federal district judge granting a regressal plan contractual relief would be exceeding statutory authority. They have no business asking for her to sign a reimbursement agreement. It's unenforceable and if it's unenforceable, it cannot be a material clause. So if they had reimbursed and paid and then you sue and lose, she has to pay it back or what? You said it's a promissory note. That may be their position. You just heard they were ambivalent on that. I mean, as a practical matter, they may have decided not to try to get blood from the stone, but if they make the determination that the stone is the torpezo responsible, which is the position they've taken in this appeal, technically they could do something about it. That's their business decision. To make this argument to Judge Wiginton that a reimbursement agreement is unenforceable. Yeah, my argument the first time around was I told the judge I was not going to include medical expenses in the claim because that way there's nothing for me to make equitable restitution out of the plan and give to them. That's what the Supreme Court said is the remedy. They get equitable restitution. If they get medical expenses, they get it back. That's the basis of the claim test under Great West Life versus NUTSU. Did you argue to Judge Wiginton that a reimbursement agreement is invalid and unlawful? Yes, I argued that it was contractual relief and not entitled to it. Contractual relief, and they're not entitled to it. I also argued that requiring me to assert their claim is contractual relief, and they're not entitled to it. When you say contractual relief, they're not entitled to it. That's from a court of law, isn't it? That's the point. It's not from their trust. But they're not asking for the subrogation agreement from a court of law. They're asking for it from the party with whom they're in privity of contract under the plan in accordance with the terms of that plan, aren't they? They're not. No, they're trying to be relieved of an obligation to pay benefits because my client didn't sign a contract. They're not allowed to enforce that contract. ERISA explicitly prohibits them from getting contractual relief. On a promissory note, a reimbursement agreement is a contract. It's unenforceable under ERISA, therefore it cannot be material to the plan, to their reason to deny benefits. What about exhaustion? According to my notes, you filed an appeal 603 days after the last denial of the claim. Is that right? Well, two answers to that. That's true. We filed it after the liability case is over with. Two answers. First, my arguments are legal. They're not necessarily according to the terms of the plan. And trustees don't decide legal questions. They only decide questions of the applicability of the plan. The other thing is the futility doctrine. The Third Circuit recognizes that there's no point in taking an appeal. You don't have to take an internal administrative appeal. You don't have to do it. It's recognized in this circuit. I was dealing with their lawyers. The lawyers didn't say, let's see what happened. But they're not, the claim wasn't going to go against what the lawyer's advice was. It was, it would be a futile action. Could you touch on the nature and extent of the injuries? No, I'm sorry. Nature and extent of the injuries? Yeah, what happened was when she stepped into the... I know what happened liability-wise. She twisted her ankle. She tore a number of ligaments in her ankle. She wound up having four surgeries. And right now, her medical expenses are $425,000. All right. Okay. Thank you very much. Judge Hardiman, do you have any further questions? No. Thank you. Gentlemen, I would ask if you would get together with the clerk's office afterwards and have a transcript prepared of this oral argument and then split the cost, if you would, please. Yes, I think so. Is that right, Maureen? I think no doubts with the clerk's office. It's actually upstairs. Upstairs, 21st floor. Thank you, Your Honor. You're welcome.